R. J. MARZELLA & ASSOCIATES, P.C.
BY: CHARLES W. MARSAR, JR., ESQUIRE
PA SUPREME COURT I.D. NO. 86072
3513 NORTH FRONT STREET
HARRISBURG, PA 17110-1438
TELEPHONE: (717) 234-7828
FACSIMILE: (717) 234-6883
EMAIL:CMARSAR@RJMARZELLA.COM

ATTORNEY FOR PLAINTIFF
LIESL NICHOLS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| LIESL NICHOLS : | DOCKET NUMBER: | _____ |
| PLAINTIFF : | | |
| vs. | PROFESSIONAL MEDICAL NEGLIGENCE | |
| MARK WHITTEN, M.D.; : | | |
| WHITTENLASEREYE, LLC : | | |
| T/D/B/A TLC WHITTEN LASER : | | |
| EYE ASSOCIATES, LLC; : | | |
| TLC VISION CENTERS, INC. : | | |
| DEFENDANTS : | JURY TRIAL DEMANDED | |

## COMPLAINT

### JURISDICTION

1.  The United States District Court for the Middle District of Pennsylvania has jurisdiction over the instant action pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000.00 and is between citizens of different states.

### THE PARTIES

2.  Liesl Nichols was at all times herein an adult individual residing in Lewisberry, Pennsylvania.

3. Defendant Mark Whitten, M.D. (hereinafter Defendant Whitten), an adult individual, is a board-certified ophthalmologist who is licensed to practice ophthalmology in the state of Maryland and who at all relevant times herein engaged in the practice of medicine in Charlotte Hall, Maryland.

4. Defendant WhittenLaserEye, LLC t/d/b/a Whitten Laser Eye, Associates (hereinafter Defendant WLEA) was at all relevant times a corporate institution with a principle place of business at 37767 Market Drive, Charlotte Hall, Maryland.

5. Defendant TLC Vision Centers, Inc (hereinafter Defendant TLC) was at all relevant times a professional corporation or a limited liability partnership with a principle place of business at 37767 Market Drive, Charlotte Hall, Maryland.

6. At all relevant times herein, Defendant Whitten and the other medical support staff who cared for or treated Ms. Nichols during her presentation to Defendant WLEA were the agents, apparent agents, servants and/or employees of Defendant WLEA and were acting within the course and scope of their employment when providing medical services to Ms. Nichols.

7. At all relevant times herein, Defendant Whitten and the other medical support staff who cared for or treated Ms. Nichols during her admission to Defendant TLC were the agents, apparent agents, servants and/or employees of Defendant TLC and were acting within the course and scope of their employment when providing medical services to Ms. Nichols.

## FACTS

8. Prior to March 29, 2001, Liesl Nichols had been a healthy 34 year-old woman whom received LASIK treatment by Defendant Whitten in 1998.

9. The LASIK procedure performed in 1998 addressed slight vision issues in both of her eyes.

10. Ms. Nichols presented to Defendant Whitten on February 9, 2001 for an evaluation to see if she would be a candidate for follow-up enhancement surgery.

11. Defendant WLEA is an affiliate of Defendant TLC.

12. At this time, Ms. Nichol's pachymetry read 492 in her left eye and 466 in her right eye.

13. Her pupil size was 6.0 in both eyes.

14. Ms. Nichols presented to Defendant Whitten on March 29, 2001 for a follow-up enhancement procedure.

15. It is believed and therefore averred that Ms. Nichols was not an appropriate candidate for the proposed surgery.

16. Following these two (2) procedures, Defendant TLC recommended the office of Dr. Smith and Dr. Saracino for follow-up care.

17. Defendant TLC refers patients to optometrists with whom they have a referral agreement, and those optometrists are expected to provide post-LASIK care for Defendant TLC's patients.

18. Ms. Nichols first presented to Dr. Smith's office on June 24, 2003 for post-LASIK follow-up care.

19. By the end of 2003, Ms. Nichols' sight began to deteriorate in her left eye.

20. Dr. Smith recommended glasses to correct her blurred vision and plugs were inserted to produce artificial tears.

21. From June of 2003 until February of 2013, Ms. Nichol's treated regularly with Dr. Smith, presenting to her office twenty-six (26) times.

22. At Ms. Nichols' June 11, 2008 appointment, Dr. Smith noted astigmatism in the left eye measuring -1.50 cylinder (cyl).

23. At her visit of December 1, 2009, Dr. Smith noted the astigmatism of the left eye was -2.50 cyl.

24. At an exam on June 30, 2012, the astigmatic cylinder in the left eye was noted to be -4.50 by Dr. Smith.

25. At Ms. Nichols' February 7, 2013 appointment, the astigmatism of the left eye was recorded as -4.75. Dr. Smith believed the decreased visual acuity in the left eye was due to a cataract.

26. There was no indication, at that time, that Dr. Smith evaluated or considered the possibility of corneal ectasia, despite a clear indication that Ms. Nichols' astigmatism had greatly worsened between June of 2008 and February of 2013.

27. Ms. Nichols was subsequently referred to David Armesto, M.D., an ophthalmologist, to be evaluated for cataracts.

28. On February 27, 2013, Dr. Armesto performed a Comparative Cataract Evaluation, in which post-LASIK ectasia was accurately diagnosed.

29. On June 14, 2013, Ms. Nichols was examined by Gautam Mishra, M.D. at Schein Ernst Eye Associates.

30. This examination found Ms. Nichols to be a candidate for Collagen Cross-Linking (CXL).

31. While CXL cannot bring back lost eyesight, it does prevent further vision loss. Consequently, this procedure is most effective when ectasia is detected early.

32. On September 23, 2013, Raymond Stein, M.D. of the Bochner Eye Institute in Toronto, Canada performed the CXL procedure on both of Ms. Nichols' eyes.

33. The procedure was successful, and Ms. Nichols' vision in her right eye was stabilized at 20/40 while the vision in her left eye remains at 20/200, which renders her legally blind in the left eye.

34. Defendants knew or should have known that Ms. Nichols' corneas were too thin making her ineligible for the follow-up enhancement surgery performed by the Defendant.

35. Defendant knew or should have known that Ms. Nichols' was not an appropriate candidate for the surgery he was recommending.

36. Defendants, however, failed to reasonably investigate Ms. Nichols' eye deterioration.

37. The Defendants in the above-captioned are jointly and severely liable to the Plaintiff for the injuries and damages set forth herein and incorporated by reference.

38. As a direct and proximate result of the Defendants' negligence, gross negligence, reckless indifference and/or the willful and wanton conduct, Ms. Nichols was

improperly evaluated and treated and has thereby inflicted upon her significant expense in the past, present and future for medical services that would not have been required had the correct evaluation been made and the appropriate treatment been rendered and a claim is made therefore.

39. As a direct and proximate result of the Defendants' negligence, gross negligence, reckless indifference and/or the willful and wanton conduct, Plaintiff Liesl Nichols has sustained and will continue to sustain a loss of life's pleasures and enjoyment and a claim is made therefore.

40. As a direct and proximate result of the Defendants' negligence, gross negligence, reckless indifference and/or the willful and wanton conduct, Ms. Nichols' thin corneas were improperly evaluated and treated, and has thereby inflicted upon her significant damage to Plaintiff's health and well-being and a claim is made therefore.

41. As a direct and proximate result of the Defendants' negligence, gross negligence, reckless indifference and/or the willful and wanton conduct, Plaintiff Liesl Nichols has sustained and will continue to sustain in the future disfigurement, embarrassment, and humiliation and a claim is made therefore.

42. As a direct and proximate result of the negligence of Defendant and/or its employees, servants, agents, and/or apparent agents as detailed below, Ms. Nichols has sustained severe, permanent and disabling injuries that have caused lost earnings and loss of earning capacity—past, present and future, for all of which damages are claimed.

43. As a direct and proximate result of the Defendants' negligence, gross negligence, reckless indifference and/or the willful and wanton conduct, Plaintiff has

sustained and will continue to sustain anguish, discomfort, inconvenience and distress and a claim is made therefore.

### COUNT I
### NEGLIGENCE

### Liesl Nichols
### v.
### Mark Whitten, M.D.

44. Paragraphs one (1) through thirty-seven (37) of this Complaint are incorporated herein by reference as if set forth at length

45. Defendant Mark Whitten, M.D. is liable to the Plaintiff, Liesl Nichols, for the injuries and damages alleged herein which were directly and proximately caused by the Defendant's negligence, gross negligence and reckless indifference with respect to Liesl Nichols by:

    a.    failing to take a thorough and proper history from Ms. Nichols regarding her vision and any prior surgical procedures;

    b.    failing to perform a thorough physical examination to determine if Ms. Nichols was an appropriate candidate for the recommended surgery;

    c.    failing to recommend, order, or perform the appropriate diagnostic studies to determine if the patient was an appropriate candidate for the surgical procedure;

    d.    failing to evaluate the patient's corneas to determine if they were too thin for the proposed procedure;

e.  failing to recognize that the proposed procedure would place the patient at increased risk for the development of Ectasia;

f.  failing to advise the patient that the proposed procedure would place her at an increased risk for the development of Ectasia;

g.  Performing the surgical procedure on a patient who was not an appropriate candidate.

46.  Defendant Mark Whitten, M.D. is liable to the Plaintiff for the injuries and damages as set forth in paragraphs thirty-eight (38) through forty-three (43) above which are incorporated herein by reference as if set forth at length.

**WHEREFORE**, Plaintiff Liesl Nichols, demands judgment against Defendant, Mark Whitten, M.D. in an amount in excess of $75,000.00 exclusive of interests and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT II
## VICARIOUS LIABILITY

### Liesl Nichols
### v.

### Whittenlasereye, LLC
### t/d/b/a Whitten Laser Eye Associates;

47.  Paragraphs one (1) through thirty-seven (37) and Count I of this Complaint are incorporated herein by reference as if set forth at length

48. Defendant Whittenlasereye, LLC t/d/b/a Whitten Laser Eye Associates is liable to the Plaintiff, Liesl Nichols, for the injuries and damages alleged herein which were directly and proximately caused by the Defendant's negligence, gross negligence and reckless indifference with respect to Liesl Nichols by:

　　a.　failing to take a thorough and proper history from Ms. Nichols regarding her vision and any prior surgical procedures;

　　b.　failing to perform a thorough physical examination to determine if Ms. Nichols was an appropriate candidate for the recommended surgery;

　　c.　failing to recommend, order, or perform the appropriate diagnostic studies to determine if the patient was an appropriate candidate for the surgical procedure;

　　d.　failing to evaluate the patient's corneas to determine if they were too thin for the proposed procedure;

　　e.　failing to recognize that the proposed procedure would place the patient at increased risk for the development of Ectasia;

　　f.　failing to advise the patient that the proposed procedure would place her at an increased risk for the development of Ectasia;

　　g.　Performing the surgical procedure on a patient who was not an appropriate candidate.

49. Defendant Whittenlasereye, LLC t/d/b/a Whitten Laser Eye Associates is liable to the Plaintiff for the injuries and damages as set forth in paragraphs thirty-eight (38) through forty-three (43) above which are incorporated herein by reference as if set forth at length.

**WHEREFORE**, Plaintiff Liesl Nichols demands judgment against Defendant, Whittenlasereye, LLC t/d/b/a Whitten Laser Eye Associates in an amount in excess of $75,000.00 exclusive of interests and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT III
## VICARIOUS LIABILITY

### Liesl Nichols
### v.

### TLC Vision Centers, Inc.

50. Paragraphs one (1) through thirty-seven (37) and Count I and II of this Complaint are incorporated herein by reference as if set forth at length

51. Defendant TLC Vision Centers, Inc. is liable to the Plaintiff, Liesl Nichols, for the injuries and damages alleged herein which were directly and proximately caused by the Defendant's negligence, gross negligence and reckless indifference with respect to Liesl Nichols by:

    a. failing to take a thorough and proper history from Ms. Nichols regarding her vision and any prior surgical procedures;

    b. failing to perform a thorough physical examination to determine if Ms. Nichols was an appropriate candidate for the recommended surgery;

    c. failing to recommend, order, or perform the appropriate diagnostic studies to determine if the patient was an appropriate candidate for the surgical procedure;

  d. failing to evaluate the patient's corneas to determine if they were too thin for the proposed procedure;

  e. failing to recognize that the proposed procedure would place the patient at increased risk for the development of Ectasia;

  f. failing to advise the patient that the proposed procedure would place her at an increased risk for the development of Ectasia;

  g. Performing the surgical procedure on a patient who was not an appropriate candidate.

  52. Defendant TLC Vision Centers, Inc. is liable to the Plaintiff for the injuries and damages as set forth in paragraphs thirty-eight (38) through forty-three (43) above which are incorporated herein by reference as if set forth at length.

**WHEREFORE**, Plaintiff Liesl Nichols demands judgment against Defendant, TLC Vision Centers, Inc. in an amount in excess of $75,000.00 exclusive of interests and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

Respectfully submitted,

**R. J. MARZELLA & ASSOCIATES, P.C.**

BY: _____
CHARLES W. MARSAR, JR., ESQUIRE
ID No. 86072

DATED: 2/6/15